UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X

CYNTHIA M. BOBBITT,

                Plaintiff,

        - against -

NEW YORK CITY HEALTH AND
HOSPITAL CORP.,

                Defendant.

------------------------------------------------- X

**OPINION AND ORDER**

08 Civ. 10765 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/22/09

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Cynthia Bobbitt, brings this action against the New York City Health and Hospital Corporation ("HHC") alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1]

---

[1]    *See* 42 U.S.C. § 2000e *et seq.*  Bobbitt's complaint also alleges that the discrimination and retaliation violated New York State and New York City Human Rights Laws.  *See* Complaint ("Compl.") at p. 2 ("[T]he Plaintiff has been consistently subjected to ethnic discrimination in violation of [section] 40-C of article four of the NYS Civil Rights Law . . . ."); *id.* at p. 6 ([T]he Plaintiff has been consistently subjected to national origin discrimination by being subjected to a hostile work environment in violation of NYC Administrative [C]ode [sections] 8-101(1), [8-]107 . . . .").  However, Bobbitt repeatedly states that she did not assert any claims under New York City or New York State Human Rights Laws.  *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary

Bobbitt claims, *inter alia*, that she was falsely accused of patient abuse and

insubordination, suspended from work, transferred, and subjected to a hostile work

environment on account of her national origin (American) and/or as retaliation

against the complaints she filed regarding the alleged national origin

discrimination.  HHC now moves for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure.  For the following reasons, HHC's motion is

granted.

## II.    BACKGROUND

HHC employed Bobbitt as a Housekeeping Aide beginning on

September 1, 1987.[2]  In 1996, Bobbitt was promoted to Patient Care Technician, a

position she still holds.[3]  At all relevant times Bobbitt worked at the Dr. Susan

---

Judgment ("Opp. Mem.") at 4 ("Plaintiff commenced this action in December of
2008, pursuant to Title VIII [sic] of the Civil Rights Act of 1964 . . . .
Accordingly, [D]efendant's request for summary judgment pursuant to NYS
Human Rights Laws is moot."); *id.* at 12 ("Plaintiff . . . files an action in this court
pursuant to Title VIII [sic] of the Civil Rights Act of 1964 . . . Plaintiff did not
address any state or city Human Rights issues in this action."); Plaintiff's Rule
56.1 Statement ("Pl. 56.1") ¶ 1 ("Plaintiff did not include any NYS or NYC
Human Rights Laws violations in her claim.").  Accordingly, any claims in the
Complaint based on New York State or City laws are deemed withdrawn and such
claims are not addressed in this Opinion and Order.

[2]       *See* Defendant's Rule 56.1 Statement ("Def. 56.1") ¶ 3; Pl. 56.1 ¶ 3.

[3]       *See* Def. 56.1 ¶¶ 2-3; Pl. 56.1 ¶¶ 2-3.

Smith McKinney Nursing and Rehabilitation Center ("DSSM") except for a period

from January 2004 to August 2004, when she worked at the East New York

Diagnostic Center ("ENYDC").[4]

## A.    The Alleged Discrimination[5]

Ena Benjamin (West Indian), Ruth Ogieste (West Indian), Phil

Romain (West Indian), and Paul Blake (West Indian) committed acts of

discrimination against Bobbitt because of her national origin (American).[6]  At all

relevant times, Ogieste was the "administrator" for DSSM, Romain was the

Director of Labor Relations for Kings County, and Blake was a Patient Care

_____

[4]      *See* Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2; 8/6/09 Deposition of Cynthia M.
Bobbitt ("Bobbitt Dep.") at 9:18-22, Ex. A to 10/22/09 Declaration of Daniel
Chiu, HHC's Counsel ("Chiu Decl.").

[5]      All of the allegations are taken from Bobbitt's pleadings and are
accepted as true for the purposes of this motion.

[6]      *See* Bobbitt Dep. at 7:1-17, 15:19-25.
      Bobbitt's Complaint appears to allege that Director of Nursing,
Jacqueline Horsford (West Indian), Director of Nursing, Julie Medina (West
Indian), Associate Nursing Director, Sharon Gales (West Indian), Labor Relations
Specialist, Denise Johnson-Green (national origin not stated), and a person
identified only as "Aviles" also discriminated against Bobbitt. *See* Compl. pp. 4-
5. However, in her deposition, Bobbitt indicated that she only claimed Benjamin,
Ogieste, Romain, and Blake discriminated against her because of her national
origin. *See* Bobbitt Dep. at 7:1-17. Furthermore, there is no evidence in the
record that Bobbitt believes Horsford, Medina, Gales, Johnson-Green, or Aviles
discriminated against her because of her national origin.

3

Technician working at DSSM.[7]  Bobbitt does not provide Benjamin's job title.[8]

### 1.    The Patient Abuse Accusation

On December 12, 2003, Benjamin accused Bobbitt of patient abuse.[9] Benjamin made this false accusation against Bobbitt because she is American and a union representative.  As a result of Benjamin's accusation, Romain recommended that Bobbitt accept a sixty-day suspension and a nine-month probation period.[10]  Bobbitt believes that Romain made this recommendation because Bobbitt is American.[11]  Bobbitt was placed on a thirty-day suspension pending an investigation.[12]

In January 2004, when the suspension was over, Ogieste reassigned Bobbitt to the ENYDC.[13]  Bobbitt believes this reassignment was based on her national origin because other employees who were accused of patient abuse were

---

[7]      See Bobbitt Dep. at 8:8-11, 14:10-11, 21:10-11.

[8]      According to the Complaint, Benjamin was the Executive Director of Patient Care at the Kings County Hospital Center. See Compl. at p. 3.

[9]      See Bobbitt Dep. at 7:23-9:1.

[10]     See id. at 14:8-22.

[11]     See id. at 15:3-25.

[12]     See id. at 9:14-17.

[13]     See id. at 9:2-10:14.

4

only reassigned to "a different unit" or a "different area[,]" not a different facility.[14]  While working at the ENYDC, Bobbitt's job duties were similar to those she performed at DSSM and her salary and benefits remained the same.[15]  In August 2004, Bobbit was transferred back to DSSM.[16]

On January 10, 2006, an Administrative Law Judge ("ALJ") issued a Report and Recommendation based on the patient abuse charges.[17]  The ALJ concluded that Bobbitt's "lack of patience and courtesy with [the patient]" may have been "deplorable" but her actions did not meet the definition of either patient abuse or neglect.[18]

### 2.   The Alleged Hostile Work Environment

Blake "always referred to [Bobbitt] as a Yankee."  Blake also called

---

[14]    *Id.* at 12:17-24.

[15]    *See id.* at 11:3-12:16.

[16]    *See id.* at 9:14-10:2.

[17]    *See* 1/10/06 State of New York Department of Health Order, unmarked Ex. to 11/3/09 Affirmation of Antoinette M. Wooten, Bobbitt's Counsel ("Wooten Aff.").

[18]    *Id.*
Bobbitt asserts in her Opposition that she was not paid while on suspension and that HHC discriminated against her by failing to reimburse the salary she lost during her suspension after the ALJ concluded that she did not commit patient abuse. *See* Opp. Mem. at 7.  However, there is no evidence in the record to support this assertion.

Bobbitt a "bumbaclot[,]" a Jamaican curse word, on two occasions and once told

her to "[s]uck your fuckin['] mother."[19]  Bobbitt does not recall the exact dates of

each incident but she believes they all took place in or before December 2006 and

that the incidents occurred "months apart."[20]  In December 2006, after Blake told

Bobbitt to "[s]uck your fuckin['] mother[,]" Bobbitt complained about Blake to

Sofia Isaac, an employee in the Human Resources Department.  Blake has not

called Bobbitt a "Yankee" or otherwise spoken to her since December 2006.[21]

      Bobbitt's "co-worker," Paula Prescod, once called her a "bitch"

during an incident that occurred on or before March 1, 2007.[22]  Bobbitt reported

---

[19]    *Id.* at 19:1-20:6.

[20]    *Id.* at 19:19-20:19.

[21]    *See id.* at 64:14-65:6.
Bobbitt's Opposition reports an alleged incident in June 2007. *See*
Opp. Mem. at 6.  Bobbitt alleges that after being served with court papers for a
state action complaining of discrimination, *see infra* Part II.B.3, Blake said to
Bobbitt "if he [Blake] couldn't work in DSSM that [Bobbitt] wasn't going to
either." *See* Opp. Mem. at 6.  The quoted language is paraphrased from Bobbit's
deposition. *See* Bobbitt Dep. at 19:3-8.  It is unclear from Bobbitt's deposition
when Blake allegedly made this statement.  However, Bobbitt states in her
deposition that she and Blake have not spoken since December 2006. *See id* at
21:2-9, 65:4-6.  There is no evidence in the record that the alleged statement
occurred after December 2006.

[22]    *See id.* at 32:12-33:15; Undated Letter from Cynthia Bobbitt
("Bobbitt Letter"), Ex. G to Chiu Decl.

this incident to Julie Medina, the Director of Nursing.[23] Additionally Bobbitt was called a "dirty and typical American" by "several co-workers" in June and July of 2007 and, in November of 2007, she was called a "troublemaker" after offering advise to another American nurse who was called a "dirty American."[24]

### 3. Additional Alleged Instances of Discrimination

Bobbitt was discriminated against on December 20, 2006 when she was sent home from work early based on a false accusation that she pushed another nurse.[25] Additionally, in June 2008, Bobbitt was not informed that she needed to sign documents that were necessary for processing workers' compensation claims.[26] By contrast, West Indian employees were contacted when they needed to sign these documents.[27]

---

[23]    *See* Bobbitt Letter.

[24]    *See* Equal Employment Opportunity Commission Charge of Discrimination ("EEOC Charge"), Ex. D to Chiu Decl.

[25]    *See* 2/11/07 Letter from Cynthia Bobbitt to Tania Whyte ("Whyte Letter"), Ex. F to Chiu Decl.

[26]    *See* EEOC Charge.

[27]    *See id.*
        In her Opposition, Bobbitt alleges that HHC discriminated against her by "fail[ing] to honour [sic] [her] request for an extended leave of absence with pay in December of 2008, pursuant to Article Five Section Eleven of the Health and Hospitals Corporation's employee contract." Opp. Mem. at 9. However, there is nothing in the record indicating that such a request was ever made or denied.

### B.    Bobbitt's Complaints

#### 1.    Bobbitt's Complaint to the New York City Commission on Human Rights

On February 9, 2006, Bobbitt attempted to file a complaint with the New York City Commission on Human Rights ("NYCCHR") alleging that she was falsely accused of patient abuse and "subjected to harassment" by Benjamin, Ogieste, Romain, and Blake in retaliation for "being a union representative," "for advocating patients' rights[,]" and for filing complaints against DSSM with the Department of Health.[28]  NYCCHR did not accept Bobbitt's complaint on the ground that it failed to state a claim for retaliation.[29]

#### 2.    Bobbitt's Complaints to HHC

Bobbitt filed three discrimination complaints with HHC.  On September 20, 2006, Bobbitt alleged that, due to her "American decent," she was "falsely accused of patient abuse, . . . misconduct[,] and insubordination" and that "management" was "creating a hostile work environment[.]"[30]  On February 11,

---

[28]    NYCCHR Intake Form and Response, Ex. C to Chiu Decl.

[29]    *See id.*

[30]    *See* 9/20/06 Letter from Bobbitt to Johnson-Green, Ex. E to Chiu Decl.

2007, Bobbitt alleged that she had been "discriminated against and harassed."[31] In support of this claim, Bobbitt cited the allegation of patient abuse, her transfer to the ENYDC, unfair denials of vacation time, false accusations of unprofessional behavior,[32] an incident where she was admonished for speaking with clerical staff, two instances where she was "cursed out" by Blake, and the incident where she was sent home after being falsely accused of pushing a nurse.[33]

Bobbitt's third complaint is undated but she claims she prepared it sometime before March 1, 2007.[34] The complaint recounts the incident where Prescod called Bobbitt a "bitch" and Bobbitt's request to be reassigned to another unit because she "did not feel comfortable working on the [current] unit, because [she] felt they would try to set [her] up somehow."[35]

---

[31]    Whyte Letter.

[32]    *See infra* Part II.C.1.

[33]    Whyte Letter.

[34]    *See* Bobbitt Letter; Bobbitt Dep. at 32:5-33:15. It is unclear from the face of the Bobbitt Letter and from Bobbitt's deposition testimony whether Bobbitt actually submitted the letter to anyone at HHC. *See* Bobbitt Letter; Bobbitt Dep. at 32:5-33:15. Nonetheless, HHC admits that Bobbitt sent the Bobbitt Letter to HHC. *See* Def. 56.1 ¶ 20.

[35]    Bobbitt Letter.

9

### 3.    Bobbitt's State Court Claims

On June 7, 2007, Bobbitt filed a complaint in New York state court

against HHC, DSSM, Benjamin, Blake, Medina, Gales, Horsford, and Ogieste

alleging discrimination and retaliation in violation of Title VII and the New York

State and New York City Human Rights Laws.[36]  In her Opposition, Bobbit states

that she withdrew this action.[37]

### 4.    Bobbitt's Complaint to the Equal Employment Opportunity Commission

On August 6, 2008, Bobbitt filed a discrimination charge with the

United States Equal Employment Opportunity Commission ("EEOC").[38]  The

charge included eight distinct allegations:  (1) on December 12, 2003, Bobbitt

"was cursed at, falsely accused of insubordination and endangering the welfare of

a patient, and told that Americans are incompetent by several of her supervisors

and a co-worker[;]" (2) between January 2004 and December 2005, Bobbitt "was

subjected to verbal abuse, threats of violence and false accusations[;]" (3) in

---

[36]    *See* Supreme Court of the State of New York County of Kings
Summons, Page 1 of Verified Complaint, and Blue Back, unmarked Exs. to
Wooten Aff.

[37]    *See* Opp. Mem. at 8.

[38]    *See* EEOC Charge.

10

December 2005, Medina sent an "office email" stating that Bobbitt "was 'toxic' to

the agency and that [Bobbitt] had been insubordinate[;]" (4) on December 6, 2006,

Bobbitt "was cursed at by a co-worker of West Indian descent" and the incident

was not investigated after Bobbitt reported it; (5) "[i]n April 2007, [Bobbitt] was

placed on suspension[;]" (6) "[i]n June and July of 2007, [Bobbitt] was told by

several co-workers that she was a dirty and typical American[;]" (7) in November

2007, Bobbitt was "accused of being a troublemaker" for giving "advice to an

American nurse who was told that she was a dirty American[;]" and (8) in June

2008, Bobbitt's workers' compensation paperwork was delayed and Bobbitt was

not contacted to sign forms required to complete the paperwork.[39]  The EEOC

dismissed the majority of Bobbitt's allegations as untimely and the remainder as

"insufficient to suggest national origin discrimination in violation of Title VII."[40]

On September 26, 2008, the EEOC sent Bobbitt a right-to-sue letter.[41]

**C.     The Alleged Retaliation**

   Bobbitt alleges that Romain, Medina, Director of Nursing, Jacqueline

---

[39] *Id.*

[40] 9/24/08 Letter from Spencer H. Lewis, Jr., EEOC District Director, to
Bobbitt, unmarked Ex. to Compl.

[41] *See* 9/26/08 EEOC Dismissal and Notice of Rights, unmarked Ex. to
Compl.

11

Horsford, and Associate Nursing Director, Sharon Gales retaliated against her for submitting her September 20, 2006 and February 11, 2007 complaints to HHC.[42]

### 1.    The Accusation of Unprofessional Behavior

Bobbitt alleges that on December 7, 2005, Medina asked Bobbitt to weigh a patient and help a second patient get ready to have her hair done.[43] Bobbitt claims that she jokingly told Medina to weigh the patient herself.[44] Bobbitt alleges that Medina reported the incident to Gales and Horsford.[45]  On December 12, 2005, Medina and Gales met with Bobbitt (the "December 12 Meeting") to give her a formal disciplinary warning.[46]  At the close of this meeting, Bobbitt requested a certain day off.[47]  Medina said that she would respond to the request after checking the schedule.[48]  Medina and Gales allege that

---

[42]    Several of the acts that Bobbitt alleges were taken in retaliation for her complaints occurred *before* Bobbitt made any complaints.  As a result, those acts could not have been taken in retaliation for her complaints.

[43]    *See* Bobbitt Dep. at 45:11-17.

[44]    *See id.* at 45:17-19.

[45]    *See id.* at 45:19-23.

[46]    *See* 12/12/05 Letter form Sharon Gales to Jacqueline Horsford ("Gales Letter"), Ex. I to Chiu Decl.

[47]    *See id.*

[48]    *See id.*

Bobbitt became agitated, spoke in an "aggressive, loud manner[,]" and threatened to call in sick if she was not given the day off.[49]  Bobbitt alleges that she left the December 12 Meeting without incident and denies threatening to call in sick.[50]

After the December 12 Meeting, Gales wrote a letter to Horsford reporting that Bobbitt had been "disrespectful" and "extremely angry and loud."[51] In this letter Gales stated her "opinion . . . that Ms. Bobbitt is very toxic to [DSSM]."[52]  Bobbitt alleges that Horsford, as an act of retaliation, "had [her] written up" in connection with this incident.[53]  Horsford's "write-up" of the events during the December 12 Meeting is the only time Horsford "had [Bobbitt] written up[.]"[54]

As a result of the December 12 Meeting, Bobbitt was formally charged with "inappropriate and unprofessional behavior."[55]  The New York

---

[49]     2/2/07 New York City Office of Administrative Trials and Hearings Report and Recommendation ("OATH Report"), Ex. I to Chiu Decl.

[50]     *See id*.

[51]     Gales Letter.

[52]     *Id.*

[53]     *See* Bobbitt Dep. at 44:22-46:18.

[54]     *Id.* at 47:11-14.

[55]     *See* OATH Report.

13

Office of Administrative Trials and Hearings ("OATH") conducted an

investigation and concluded that Bobbitt "committed misconduct when she talked

disrespectfully to a supervisor, threatened [the supervisor], and ignored repeated

requests to leave her supervisor's office."[56]  In accordance with OATH's

recommendation, Bobbitt was placed on a ten-day suspension without pay.[57]

### 2.      The Refusal to Modify Bobbitt's Job Duties

On June 25, 2008, Bobbitt injured herself while working.[58]  Bobbitt

was out of work for several weeks on workers' compensation.[59]  Bobbitt's doctor

cleared Bobbitt to "return to work full duty" beginning on August 18, 2008.[60]

When Bobbitt returned to work on August 18, 2008, she asked Horsford to place

her in a clinic with a podiatrist or a dentist in order to avoid heavy lifting.[61]

---

[56]      *Id.*

[57]      *See id.*; Bobbitt Dep. at 46:11-18.

[58]      *See* Workers' Compensation Abstract Detail, Ex. H to Chiu Decl.

[59]      *See id.*

[60]      8/15/08 Letter from Island Musculoskeletal Care, M.D., P.C., Ex. K
to Chiu Decl.

[61]      *See* Bobbitt Dep. at 37:21-38:7.

Horsford denied Bobbitt's request.[62]  Due to the same injury, Bobbitt went out on

workers' compensation a second time.[63]  In June 2009, Bobbitt returned to work

again and her duties were modified so that she would not have to perform any

heavy lifting.[64]

### 3.    The Transfer

Bobbitt alleges that when she returned to work in June 2009,

Horsford retaliated against her by transferring her to work in unit 2B instead of

unit 2A where she had previously worked.[65]  Bobbitt's job duties, pay, and

benefits all remained the same after the transfer to 2B.[66]  The only difference

between units 2A and 2B was that Bobbitt knew the patients residing in unit 2A

but was unfamiliar with the patients residing in unit 2B.[67]

### 4.    Additional Alleged Instances of Retaliation

Bobbitt alleges that Horsford retaliated against her by refusing to

---

[62]    *See id.*; 10/1/08 Letter from Horsford to Bobbitt, unmarked Ex. to
Wooten Aff.

[63]    *See* Bobbitt Dep. at 43:5-9.

[64]    *See id.* at 38:19-39:19.

[65]    *See id.* at 42:23-43:9.

[66]    *See id.* at 44:16-21.

[67]    *See id.* at 43:5-44:15.

speak to Bobbitt for "practically a year" starting in September or October of 2007.[68]  Bobbitt also alleges that Romain retaliated against her by recommending a sixty-day suspension after Benjamin accused Bobbitt of abusing a patient.[69]

## III.   APPLICABLE LAW

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[70]  "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law.'"[71]  "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[72]

---

[68]   *Id.* at 36:22-37:6.

[69]   *See id.* at 51:1-52:3.

[70]   Fed. R. Civ. P. 56(c).

[71]   *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[72]   *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

16

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[73]  To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[74] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[75]  However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[76]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving

---

[73]  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[74]  *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[75]  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[76]  *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

17

party and draw all reasonable inferences" in that party's favor.[77]  However, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"[78]  "'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[79]  Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[80]

"'It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'"[81]  "Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such

---

[77]  *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[78]  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[79]  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[80]  *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[81]  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)) (alteration in original).  *Accord Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to . . . other areas of litigation.").

cases where . . . plaintiff has offered little or no evidence of discrimination."[82]
Nonetheless, caution must be exercised in granting summary judgment in
employment discrimination cases where the employer's intent is genuinely at issue
and circumstantial evidence may reveal an inference of discrimination.[83]
However, "'[e]ven in the discrimination context, a plaintiff must prove more than
conclusory allegations of discrimination to defeat a motion for summary
judgment.'"[84] "'[M]ere conclusory allegations, speculation or conjecture will not
avail a party resisting summary judgment.'"[85]

## B.    Discrimination Under Title VII

Title VII prohibits an employer from "discriminat[ing] against any

---

[82]    *Alphonse v. State of Connecticut Dep't of Admin. Servs.*, No. 3:02 CV
1195, 2004 WL 904076, at *7 (D. Conn. Apr. 21, 2004) (quotation marks and
citation omitted).

[83]    *See Feingold*, 366 F.3d at 149.

[84]    *Flakowicz v. Raffi Custom Photo Lab, Inc.*, No. 02 Civ. 9558, 2004
WL 2049220, at *8 (S.D.N.Y. Sept. 13, 2004) (quoting *Schwapp v. Town of Avon*,
118 F.3d 106, 110 (2d Cir. 1997)).

[85]    *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d
Cir. 2003) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)
(alteration in original)). *Accord Cameron v. Community Aid for Retarded
Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("'[P]urely conclusory allegations
of discrimination, absent any concrete particulars,' are insufficient" to satisfy an
employee's burden on a motion for summary judgment.) (quoting *Meiri*, 759 F.2d
at 998) (alteration in original).

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[86] "To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*."[87] "[T]he initial burden rests with the plaintiff to establish a prima facie case of discrimination."[88] A plaintiff meets this burden by showing that: (1) she falls within a protected group; (2) she was qualified for the position she held; (3) she was subject to an adverse employment action; and (4) the adverse employment action was taken under circumstances giving rise to an inference of unlawful discrimination.[89] An adverse employment action is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"[90]

---

[86]    42 U.S.C. § 2000e-2(a)(1).

[87]    *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Woodman v. WWOR-TV*, 411 F.3d 69, 76 (2d Cir. 2005) (applying *McDonnell Douglas* framework to age discrimination claim)).

[88]    *Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005).

[89]    *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003); *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

[90]    *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).

The Second Circuit has "characterized the evidence necessary to satisfy this initial burden as 'minimal' and 'de minimis.'"[91]

Once a plaintiff establishes a prima facie case, a rebuttable presumption of unlawful discrimination arises and the burden of production shifts to the employer to proffer a "legitimate, nondiscriminatory reason" for the challenged employment action.[92] "If the defendant articulates such a reason, 'the presumption of discrimination drops out,' and the plaintiff must 'prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"[93] At this final stage of analysis, courts must "examin[e] the entire record to determine whether the plaintiff could satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"[94] In other words, plaintiff is left with the final burden of proving that her national origin "'was the real reason' for any

---

[91]    *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). *Accord Woodman*, 411 F.3d at 76.

[92]    *Woodman*, 411 F.3d at 76.

[93]    *Id.* (quoting *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001)).

[94]    *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)).

21

adverse employment action."[95]  Direct evidence is not required; circumstantial

evidence will suffice.[96]

### 1.   Hostile Work Environment

Conduct creating a hostile work environment is actionable under Title

VII when such conduct occurred because of an employee's protected

characteristic, *e.g.*, national origin.[97]

> In order to prevail on a hostile work environment
> claim, a plaintiff must make two showings: (1) that
> "the harassment was sufficiently severe or pervasive
> to alter the conditions of the victim's employment
> and create an abusive working environment" and (2)
> that there is a "specific basis for imputing the
> conduct creating the hostile work environment to the
> employer."[98]

"[T]he misconduct shown must be 'severe or pervasive enough to create an

---

[95]   *Cross*, 417 F.3d at 248 (quoting *Schnabel*, 232 F.3d at 87).

[96]   *See Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998).

[97]   *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ( "It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.") (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998)).

[98]   *Duch v. Jakubek*, No. 07 CV 3503, — F.3d —, 2009 WL 4421267, at *3 (2d Cir. Dec. 4, 2009) (quoting *Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir. 2004)).

objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."[99]

In determining whether a hostile work environment exists, courts must consider: "'(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted.'"[100] "As a general rule, incidents of discriminatory conduct must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"[101] Isolated acts do not generally meet the threshold of severity or pervasiveness.[102] In sum, "a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working

---

[99] *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[100] *Richards v. New York City Dep't of Homeless Servs.*, No. 05 CV 5986, 2009 WL 700695, at *7 (E.D.N.Y. Mar. 15, 2009) (quoting *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)).

[101] *Alfano*, 294 F.3d at 374 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

[102] *See Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

environment."[103] In considering the above factors, however, courts must keep in mind that Title VII is not a workplace "civility code."[104] When the discriminatory conduct is attributable to a co-worker, rather than a supervisor, the employer is only liable if it "'failed to provide a reasonable avenue for complaint' or . . . 'it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'"[105]

## 2. Retaliation

The antiretaliation clause of Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[106] To establish a prima facie case

---

[103]   *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Perry*, 115 F.3d at 149).

[104]   *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). *Accord Ricks v. Conde Nast Publ'ns Inc.*, 92 F. Supp. 2d 338, 345 (S.D.N.Y. 2000) (conduct that is "merely offensive, unprofessional or childish is not discriminatory conduct proscribed by Title VII"); *Curtis v. Airborne Freight Co.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000) (Title VII does not "protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors"); *Forts v. City of New York Dep't of Corr.*, No. 00 Civ. 1716, 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003).

[105]   *Duch*, 2009 WL 4421267, at *4 (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)).

[106]   42 U.S.C. § 2000e-3(a).

of retaliation, the plaintiff must show:

> "[1] that [] [she] engaged in protected participation . . . under Title VII . . . , [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."[107]

### 3.    Statute of Limitations

Title VII requires a charge to be filed with the EEOC within three hundred days of the alleged discriminatory act.[108]  Only events that occurred in the three hundred days prior to the filing of charges with the EEOC are actionable under Title VII.[109]  However, when a claim alleges a hostile work environment, "the incidents constituting a hostile work environment are part of one unlawful employment practice" and "the employer may be liable for all acts that are part of this single claim."[110]  Accordingly, under the continuing violation doctrine, "[i]n

[107]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quoting *Cifra v. General Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001); alteration in original).

[108]    *See* 42 U.S.C. § 2000e-5(e)(1).

[109]    *See Alleyne v. American Airlines, Inc.*, 548 F.3d 219, 219 (2d Cir. 2008) (affirming district court's dismissal of plaintiff's discrimination claim when the alleged discriminatory act occurred more than three hundred days from the date plaintiff filed a complaint with the EEOC).

[110]    *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).

order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."[111] Furthermore, the statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim."[112]

However, the continuing violation doctrine does not apply to "*discrete* discriminatory acts" which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[113]  The Supreme Court distinguishes discrete acts from acts contributing to a hostile work environment on the ground that creation of a hostile work environment "involves repeated conduct" such that "[t]he unlawful employment practice . . . cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."[114]  Examples of discrete acts that are not covered by the continuing violation doctrine include "termination, failure to promote, denial of transfer,

---

[111]    *Id.*

[112]    *Id.* at 113.

[113]    *Id.* (emphasis added).

[114]    *Id.* at 115 (quotation marks omitted).

[and] refusal to hire."[115]

### 4.    Administrative Exhaustion

"[A] claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."[116]  "Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency."[117]  The Second Circuit considers claims reasonably related when "(1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'"[118]

---

[115]     *Id.* at 114.

[116]     *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001).

[117]     *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).

[118]     *Alfano*, 294 F.3d at 381 (quoting *Butts v. New York Dep't of Hous., Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998)).

## IV.    DISCUSSION

### A.    Bobbitt's Discrimination and Retaliation Claims Are Barred, in Part, by the Statute of Limitations

Because Bobbitt filed her discrimination charge with the EEOC on

August 6, 2008, the three hundred-day statute of limitations bars Bobbitt's claims

based on events occurring before October 11, 2007.[119]  Accordingly, HHC is

entitled to summary judgment on Bobbitt's claims that (1) in December 2003,

Benjamin falsely accused Bobbitt of abusing a patient based on Bobbitt's national

origin; (2) in December 2003, Romain recommended that Bobbitt accept a sixty-

day suspension due to Bobbitt's national origin and as an act of retaliation; (3) in

January 2004, Ogieste reassigned Bobbitt to the ENYDC based on Bobbitt's

national origin; (4) before and during December 2006, on March 1, 2007, and in

June and July of 2007, Blake, Prescod and other co-workers created a hostile work

environment by using derogatory language toward Bobbitt; (5) on December 20,

---

[119]    *See* 42 U.S.C. § 2000e-5(e)(1).  *Accord, e.g.*, *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999) (affirming district court's dismissal of police officer's Title VII claim that he was wrongfully denied access to the police gymnasium because the denial of access date was more than three hundred days from the date plaintiff filed his EEOC complaint); *Grant v. Pathmark Stores, Inc.*, No. 06 Civ. 5755, 2009 WL 2263795, at *7 (S.D.N.Y. July 29, 2009) (concluding plaintiff's Title VII failure to promote claim was time barred "[b]ecause the failure to promote occurred before the 300-day period prior to [plaintiff's] filing of his EEOC complaint").

2006, Bobbitt was discriminated against by being sent home early after she was

accused of pushing another nurse; and (6) in December 2005, Medina, Gales, and

Horsford retaliated against Bobbitt by charging her with unprofessional conduct.[120]

Furthermore, Bobbitt's claim of an ongoing hostile work environment is time

barred because Bobbitt does not offer admissible evidence of *any* discriminatory

acts after October 11, 2007.[121]

### B.   Bobbitt's Retaliation Claims Are Barred Because Bobbitt Failed to Exhaust Her Administrative Remedies

Bobbitt claims that Horsford retaliated against her by refusing to

speak with her for a year beginning in September or October of 2007, refusing to

modify Bobbitt's job duties when Bobbitt returned from workers' compensation in

August 2008, and transferring Bobbitt to Unit 2B when Bobbitt returned from

workers' compensation in June 2009.  However, Bobbitt failed to include any of

---

[120]   It should be noted that Romain's recommendation and Medina, Gales, and Horsford's charge of unprofessional conduct could not be acts of retaliation because both acts occurred before Bobbitt filed any discrimination complaints. *See supra* note 42.

[121]   *See infra* Part IV.C.  *See also Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (finding a terminated employee's Title VII hostile work environment claim untimely when the only alleged discriminatory act occurring within the statute of limitations was the employee's termination and the employee "proffered no evidence to show that the termination, even if discriminatory, was in furtherance of the alleged practice of racial harassment").

these claims in the complaint she filed with the EEOC.[122]  Thus, this Court lacks subject matter jurisdiction over Bobbitt's retaliation claims unless they are reasonably related to Bobbitt's EEOC complaint.[123]

Bobbitt does not allege that any of Horsford's retaliatory acts occurred as a result of her filing the EEOC complaint, and none of the alleged acts were carried out in the same manner as acts alleged in Bobbitt's EEOC complaint. Additionally, the investigation of Bobbitt's EEOC claims could not reasonably be expected to include the acts that Bobbitt alleges Horsford committed.  None of the charges in Bobbitt's EEOC complaint relate directly to Horsford, nor do any of the charges allege that HHC employees refused to speak with Bobbitt, inappropriately refused to modify Bobbitt's job duties, or inappropriately transferred Bobbitt.[124] Accordingly, Bobbitt's retaliation claims are not reasonably related to her EEOC complaint and HHC is entitled to summary judgment on these claims.[125]

---

[122]  *See* EEOC Charge of Discrimination, Ex. D to Chiu Decl.

[123]  *See Williams*, 458 F.3d at 70.

[124]  *See* EEOC Charge.

[125]  *See Alfano*, 294 F.3d at 381-82.
    The court recognizes that Bobbitt's claim that Horsford retaliated against her by transferring her from unit 2A to unit 2B is less than three hundred days old. Therefore, Bobbitt may still file a timely complaint with the EEOC based on this transfer. However, for the reasons stated below, such a claim is likely untenable given that Bobbitt failed to allege an adverse employment action

30

### C.    Bobbitt Has Not Satisfied Her Burden of Proof Regarding the Remainder of Her Claims

The remainder of Bobbitt's claims — that she was discriminated against in November 2007 when she was called a "troublemaker" for offering advice to another nurse who was called a dirty American, and that she was discriminated against in June 2008 when she was not informed that she needed to sign workers' compensation forms — are insufficient to defeat HHC's motion for summary judgment. The allegations are merely conclusory because there is no admissible evidence in the record showing that either of the events occurred. The only reference to these events is found in Bobbitt's EEOC complaint — which is not admissible for the purpose of showing that the alleged events occurred. Bobbitt submits no sworn statement — either by affidavit, deposition testimony, or verified complaint — as to these events. Accordingly, HHC is entitled to summary judgement on the remainder of Bobbitt's claims because Bobbitt failed to meet her burden of producing evidence showing that the alleged events occurred. Furthermore, because Bobbitt failed to offer admissible evidence as to these allegations, she cannot use them to form the basis of a timely hostile work environment claim.

---

and that national origin does not appear to be a motivating factor in the decision to transfer Bobbitt.

31

### 1.   Alternatively, Bobbitt Fails to State a Discrimination Claim Under Title VII

Bobbitt alleges that her workers' compensation payments were delayed because she was not informed that she needed to sign certain documents.[126]  Bobbitt additionally alleges that West Indian employees were contacted when their workers' compensation files were incomplete.[127]  This incident is insufficient to establish a prima facie claim for discrimination under Title VII because Bobbitt cannot show that she was subjected to any adverse employment action.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."[128]  Examples of materially adverse changes include,"'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less

---

[126]   *See* EEOC Charge.
The length of the alleged delay in Bobbitt's workers' compensation payments is not stated.

[127]   *See id.*
Although never explicitly stated, it can be inferred from Bobbitt's EEOC complaint that she alleges that, unlike West Indian employees, employees of American descent were not contacted when their workers' compensation files were incomplete.

[128]   *Galabya*, 202 F.3d at 640 (quotation marks omitted).

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"[129]   A delay in receiving workers' compensation check does not change the terms or conditions of Bobbitt's employment.[130]   Bobbitt never alleges that she failed to receive all the money to which she was entitled or that any other consequence occurred as a result of her delay in signing the workers' compensation papers or receiving her workers' compensation check.   Accordingly, the delay in Bobbitt's workers' compensation payment cannot support a Title VII discrimination claim and HHC is entitled to summary judgment on this issue.

---

[129]   *Id.* (quoting *Crady,* 993 F.2d at 136).

[130]   *See Carter v. Potter,* No. 06 Civ. 3854, 2008 WL 1848639, at *4 (E.D.N.Y. April 23, 2008) (finding that employer's delay of "several months" in processing employee's workers' compensation papers did not constitute an adverse employment action). *See also Miller v. New York City Health & Hosp. Corp.,* No. 00 Civ. 140, 2005 WL 2022016, at *6 (S.D.N.Y. Aug. 22, 2005) (finding that a seven month delay in transmitting a paycheck was not a materially adverse employment action under Title VII but that a four-year delay "may constitute more than inconvenience"); *Lee v. New York State Dep't of Health,* Nos. 98 Civ. 5712 & 99 Civ. 4859, 2001 WL 34031217, at *17 (S.D.N.Y. Apr. 23, 2001) (holding that delay in receipt of overtime payment was not an adverse employment action); *Badrinauth v. Touro College,* No. 97 Civ. 3554, 1999 WL 1288956, at *6 (E.D.N.Y. Nov. 4, 1999) ("A delay in the receipt of a paycheck is not an adverse employment action."); *Sprott v. Franco,* No. 94 Civ. 3818, 1997 WL 79813, at *13 n.5 (S.D.N.Y. Feb. 25, 1997) (finding that delay in receipt of a paycheck cannot constitute an adverse employment action when the paycheck ultimately was delivered to plaintiff).

33

Similarly, Bobbitt's allegation that she was once called a "troublemaker," is insufficient to state a claim for discrimination under Title VII. Even assuming that the comment was in fact motivated by Bobbitt's national origin, it is well settled that the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII.'"[131]   Accordingly, this incident is actionable, if at all, only in the context of a hostile work environment claim.

### 2.   Alternatively, Bobbitt Fails to State a Hostile Work Environment Claim Under Title VII

Neither the incident where Bobbitt was called a "troublemaker" nor the incident where Bobbitt was not informed that she needed to sign workers' compensation papers, even combined with the prior incidents where Bobbitt was called a "Yankee," "bumbaclot," "bitch," and "dirty and typical American," establish a hostile work environment.  "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."[132]   Here, the comments and

---

[131]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[132]     *Id.* (quotation marks and citations omitted).

34

actions that Bobbitt alleges constituted a hostile work environment occurred only

sporadically — the incidents in or before December 2006 where Blake made

various derogatory comments to Bobbitt occurred "months apart," Bobbitt was

called a "bitch" once in March 2007 and called a "troublemaker" once in

November 2007, and in June 2008 she was not told she needed to sign workers'

compensation papers.  These comments and actions, even if motivated by

Bobbitt's national origin, did not occur with the frequency and severity required to

sustain a hostile work environment claim.[133]  Accordingly, HHC is entitled to

summary judgment on this issue.

## V.   CONCLUSION

For the foregoing reasons, HHC's motion for summary judgement is

---

[133]    *See, e.g., Alfano*, 294 F.3d at 380 (finding the alleged conduct
non-actionable when the incidents were "too few, too separate in time, and too
mild . . . to create an abusive working environment"); *Eldaghar v. City of New
York Dep't of Citywide Admin. Servs.*, No. 02 Civ. 9151, 2008 WL 2971467, at
*14-17 (S.D.N.Y. July 31, 2008) (granting defendant's motion for summary
judgment on plaintiff's hostile work environment claims based on six alleged
derogatory comments and other alleged discriminatory conduct); *Adam v. Glen
Cove Sch.*, No. 06 Civ. 1200, 2008 WL 508689, at *11 (E.D.N.Y. Feb. 21, 2008)
(finding two alleged uses of the "N word" insufficient to sustain a claim for a
hostile work environment); *Trinidad v. New York City Dep't of Corr.*, 423 F.
Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (finding isolated incidents of defendant
calling plaintiff a bitch and making sexual remarks over the course of five and
one-half years of employment insufficient to support a hostile work environment
claim).

granted.  The Clerk of the Court is directed to close this motion (Docket No. 14) and this case (08-CV-10765).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 22, 2009

36

## - Appearances -

**For Plaintiff:**

Antoinette M. Wooten, Esq.
The Law Offices of Patricia Martin-Gibbons
233 Broadway
5th Floor
New York, New York 10279
(212) 962-1031

**For Defendant:**

Daniel Chiu
Assistant Corporation Counsel
New York City Law Department
900 Sheridan Avenue
Room 6A14
Bronx, New York 10451
(212) 788-1158